Alan B. BURDICK, Plaintiff–Appellee,

v.

Morris TAKUSHI, Director of Elections, State of Hawaii; John Waihee, Lieutenant Governor of Hawaii; Benjamin Cayetano, in his capacity as Lieutenant Governor of the State of Hawaii, Defendants–Appellants.

Alan B. BURDICK, Plaintiff–Appellee,

v.

Benjamin CAYETANO, in his capacity as Lieutenant Governor of the State of Hawaii; Morris Takushi, Director of Elections of the State of Hawaii, Defendants–Appellants.

Nos. 90–15873, 90–15876 and 90–15877.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1990.

Decided March 1, 1991.

Opinion Withdrawn June 28, 1991.

Opinion Filed June 28, 1991.

Steven S. Michaels, Deputy Atty. Gen., Honolulu, Hawaii, for defendants-appellants.

Mary Blaine Johnston, Wailuku, Hawaii, for plaintiff-appellee.

James M. Johnson, Sr. Asst. Atty. Gen., Olympia, Wash., for amicus curiae.

Before SKOPIL, BEEZER and FERNANDEZ, Circuit Judges.

## ORDER

The opinion filed on March 1, 1991, and cited at 927 F.2d 469 (9th Cir.1991) is withdrawn. The attached opinion is ordered filed.

The panel has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court has been advised of the suggestion for rehearing en banc. An active judge has requested a vote on whether to rehear the matter en banc. A vote has been taken, and has failed to receive a majority of votes in favor of en banc consideration. Fed.R.App.P. 35(b).

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

## OPINION

BEEZER, Circuit Judge:

The district court ruled that Hawaii's lack of provision for the casting and counting of write-in votes in statewide general elections impermissibly infringed a Hawaii voter's rights of expression and association as protected by the first and fourteenth amendments. The district court issued a preliminary injunction ordering Hawaii to provide for the casting and counting of write-in votes and then stayed the injunction pending appeal. We reverse.

### I

The facts in this case are undisputed. In June 1986, Alan Burdick notified the Director of Elections and the Lieutenant Governor (hereinafter collectively referred to as the "State"), that he wanted to cast write-in votes in the upcoming primary elections and in future elections. The State advised Burdick that its election laws did not provide for write-in voting and that any write-in votes would be ignored.

Burdick filed suit in federal court, claiming that the lack of provision for write-in voting violated both the Hawaii Constitution and the United States Constitution. The district court held that the failure to provide for write-in voting constituted a

violation of Burdick's rights of freedom of expression and association. The court issued a preliminary injunction directing the State to provide for the casting and counting of write-in votes in the November 1986 statewide elections. The State moved for a stay of the preliminary injunction pending appeal, and the motion was denied.

The State appealed the district court's order and denial of stay, and we granted a stay pending appeal. On May 17, 1988, we reversed and directed the district court to abstain from reaching the federal constitutional issue under the *Pullman* abstention doctrine. *See Burdick v. Takushi*, 846 F.2d 587 (9th Cir.1988) ("[A] definitive resolution of the unsettled question whether Hawaii's election laws actually prohibit write-in voting might obviate the need for a federal court to decide the federal constitutional question. . . .").

On remand, the district court certified the following three questions to the Hawaii Supreme Court:

> (1) Does the Constitution of the State of Hawaii require Hawaii's election officials to permit the casting of write-in votes and require Hawaii's election officials to count and publish write-in votes?
>
> (2) Do Hawaii's election laws require Hawaii's election officials to permit the casting of write-in votes and require Hawaii's election officials to count and publish write-in votes?
>
> (3) Do Hawaii's election laws permit, but not require, Hawaii's election officials to allow voters to cast write-in votes, and to count and publish write-in votes?

On July 21, 1989, the Hawaii Supreme Court answered no to each question. *Burdick v. Takushi*, 70 Haw. 498, 776 P.2d 824, 825 (1989). With a definitive ruling from the Hawaii Supreme Court that Hawaii's election laws prohibited write-in voting, Burdick renewed his motion for summary judgment in the district court. On May 10, 1990, the district court again ruled that Hawaii's prohibition on write-in voting impermissibly infringed Burdick's federally guaranteed rights of expression and association. The district court again issued a preliminary injunction directing the State to provide for the casting and counting of write-in votes. *See Burdick v. Takushi*, 737 F.Supp. 582 (D.Haw.1990).

Because a statewide general election was less than four months away, and because this court had granted a stay of the prior preliminary injunction, the district court granted the State's motion to stay the current preliminary injunction pending appeal. *Id.* at 592–593. The State timely appealed the district court's final order.

## II

■ We have jurisdiction pursuant to 28 U.S.C. § 1291. A grant of summary judgment is reviewed de novo. *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

The State asserts that Burdick does not have standing to challenge Hawaii's general election laws. To support its assertion, the State points to the fact that Burdick cannot vote in some of the races affected by the preliminary injunction and the fact that he has failed to identify a particular candidate for whom he wants to cast his write-in vote. To have standing a party must show that:

> "he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."

*Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted).

Burdick has demonstrated that his rights as a voter to freedom of expression and association are threatened by Hawaii's prohibition on write-in voting. Although an order striking down the prohibition on write-in voting may apply to races in which Burdick cannot vote, the State does not contend that there is any difference in the

way that the prohibition applies to the various elections throughout the state. The prohibition is a general statewide restriction that affects Burdick personally, and therefore he has standing to challenge it. *See Erum v. Cayetano,* 881 F.2d 689, 691 (9th Cir.1989) (Hawaii voter has standing to challenge the whole of the State election laws creating ballot access restrictions).

### III

The Supreme Court has acknowledged that "the Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections," and that "[e]ach State has the power to prescribe the qualifications of its officers and the manner in which they shall be chosen." *Sugarman v. Dougall,* 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853 (1973) (citations and internal quotation omitted). Furthermore, the Constitution specifically authorizes states to regulate: "The Time, Places and Manner of holding Elections for Senators and Representatives." U.S. Const. art. I, § 4, cl. 1. The Supreme Court has also recognized that "as a practical matter, there must be a substantial regulation of elections if they are going to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974).

A state's broad powers to prescribe the time, place and manner of elections, however, "does not extinguish the State's responsibility to observe the limits established by the First Amendment rights of the State's citizens." *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986). The rights to cast one's vote effectively and to associate for the advancement of political beliefs are guaranteed by the first and fourteenth amendments, and the state may not burden these rights excessively. *See Williams v. Rhodes,* 393 U.S. 23, 30–31, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968).

The questions presented by a challenge to a specific provision in a state's election laws cannot be resolved by applying a "litmus paper test." *Storer,* 415 U.S. at 730, 94 S.Ct. at 1279. There is no self-executing rule that is a substitute for the "hard judgments that must be made." *Id.* In *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983), the Supreme Court set forth an analytical process for making these hard judgments. A court must:

> first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.*

We begin the *Anderson* analysis by determining the "character and magnitude" of the injury to Burdick's rights of expression and association. Burdick asserts that the prohibition on write-in voting impinges his right to vote for the candidate of his choice. He asserts that the right to vote for the candidate of one's choice is a fundamental right.

Article I, § 2 of the United States Constitution grants persons qualified to vote "a constitutional right to vote and to have their votes counted." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964). The Supreme Court has stated that:

> No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are

illusory if the right to vote is undermined.

*Id.*

■ The fundamental nature of the right to vote is based on a citizen's right to have a voice in the selection of those who govern. Casting one's vote does not implicate fundamental rights in a vacuum. Fundamental rights are implicated as a part of the process through which citizens elect the people who make and administer the laws. Although Burdick is guaranteed an equal voice in the election of those who govern, Burdick does not have an unlimited right to vote for any particular candidate.

For example, Art. I, § 2 of the United States Constitution limits congressional candidates to persons twenty-five and older with seven years citizenship, and Art. II, § 1 of the United States Constitution limits presidential candidates to natural born citizens thirty-five and older. Moreover, Art. II, § 1 of the United States Constitution provides that a vote for the office of the President is for an Elector rather than for an individual presidential candidate. The Supreme Court has upheld numerous state restrictions on who may qualify to run for certain offices. *See e.g., Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) (incumbent Justice of the Peace denied right to seek election to state legislature, and state and county office holders deemed automatically resigned if they run for another elective office); *Storer,* 415 U.S. 724, 94 S.Ct. 1274 (state can require candidate to sever affiliation with political party one year prior to election in order to run as independent candidate); *American Party of Texas v. White,* 415 U.S. 767, 782, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974) (state can deny place on ballot to frivolous candidate by requiring candidates to "demonstrate a significant, measurable quantum of community support").

The right to vote is inexorably intertwined with the State's right to regulate the election process. To determine whether the prohibition on write-in voting burdens the fundamental right of participating equally in the election of those who govern, we must look at the Hawaii election laws as a whole.

Hawaii election laws provide candidates with considerable ease of access to the ballot. If Burdick desires to vote for a particular candidate, that candidate need only be qualified for the office being sought[1] and demonstrate a minimal amount of support to be placed on the ballot.[2]

■ If Burdick desired to vote for a fictional character as a means of making a political statement, he could not get that character's name on the ballot. This restriction may impinge Burdick's political speech, but "ample alternative channels" exist for Burdick to advance his political views. *See Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 535, 100 S.Ct. 2326, 2332, 65 L.Ed.2d 319 (1980). Similarly, the prohibition on write-in voting may limit Burdick's political speech, but it does not restrict the alternative channels available to Burdick for expressing his political views.

The prohibition on write-in voting is not based on the content or subject matter of a write-in vote but rather is applicable to all write-in votes and, thus, is a content-neutral, time, place, or manner restriction. *See id.* at 536, 100 S.Ct. at 2332. "A restriction that regulates only the time, place, or manner of speech may be imposed so long as it is reasonable." *Id.*

Hawaii puts few restrictions on a candidate's access to the ballot, and the prohibition on write-in voting places only minimal restrictions on political speech. According-

1. Haw.Rev.Stat. § 12–3 (1988).

2. Under Hawaii election laws a candidate for county office or the legislature may gain access to the primary ballot by simply submitting a petition with the signatures of fifteen eligible voters; a candidate for Congress, governor, lieutenant governor, or the board of education may gain access with twenty-five signatures. Haw. Rev.Stat. § 12–5 (1990 Supp.). Hawaii's election laws also provide for easy access to the ballot by a party. Haw.Rev.Stat. § 11–62 (1988) (signatures of 1% of total registered state voters as of last election).

ly, the fact that Burdick cannot cast a write-in vote does not place any substantial burden on his fundamental right to participate equally in the election of those who will make or administer the laws.[3]

The fact that a voter may want to say that no candidate is acceptable does not mean that he has a fundamental right to say that on the ballot. Although the voter has a protected right to voice his opinion and attempt to influence others, he has no guarantee that he can voice any particular opinion through the ballot-box. Accordingly, Burdick's asserted right to vote for *any* candidate he chooses does not implicate fundamental constitutional protections.

The second step in the *Anderson* analysis is the identification and evaluation of the "precise interests put forth by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789, 103 S.Ct. at 1570. The State advances three interests in support of its election laws: political stability, voter education, and protecting the internal structure of the State's election laws.

### A. *Political Stability*

Hawaii asserts that it has a legitimate interest in protecting against "sore loser" candidacies and party raiding.[4] The Supreme Court has acknowledged that States have a compelling interest in ensuring that unrestrained factionalism does not damage the election process. *See Munro v. Socialist Workers Party*, 479 U.S. 189, 196, 107 S.Ct. 533, 538, 93 L.Ed.2d 499 (1986). The prohibition on write-in voting serves that interest by ensuring that sore losers do not sidestep the ballot access requirements and by ensuring that voters do not sidestep Hawaii's ban on cross-over voting.

### B. *Informed Electorate*

Hawaii also asserts that it has an interest in protecting the election process from late blooming candidates. The Supreme Court has acknowledged that the State's interest in fostering an informed and educated electorate is a legitimate interest. *See Anderson*, 460 U.S. at 796, 103 S.Ct. at 1574. The prohibition on write-in voting serves that interest by ensuring that candidates place themselves on the ballot in time to allow the electorate an ample opportunity to examine the candidates' positions and qualifications.

### C. *Internal Structure of Election Laws*

The final interest advanced by Hawaii is its interest in protecting the primary mandate. A State's interest in protecting the integrity of its election process is a compelling interest. *Eu v. San Francisco City Democratic Central Comm.*, 489 U.S. 214, 226, 109 S.Ct. 1013, 1022, 103 L.Ed.2d 271 (1989). Hawaii election law provides for the automatic seating of a candidate who is unopposed in a primary. Haw.Rev.Stat. § 12–41 (1988). The prohibition on write-in voting ensures that a candidate "seated" after the primary is not challenged in the general election by a write-in candidate.

Under the *Anderson* analysis, therefore, Hawaii's ban on write-in voting does not impermissibly infringe Burdick's constitutional rights of expression and association.

---

**3.** The Supreme Court has not faced the question whether a person's interest in casting a write-in vote is a fundamental right. Rather, the Court has provided conflicting messages concerning the role write-in voting plays in the election process. *Compare Storer*, 415 U.S. at 736 n. 7, 94 S.Ct. at 1282 n. 7 (resort to write-in alternative provided by California law was adequate substitute for independent candidate who did not qualify for general election ballot) *with Anderson*, 460 U.S. at 799 n. 26, 103 S.Ct. at 1575 n. 26 (write-in vote is not an adequate substitute for having a candidate's name appear on the ballot in presidential election) *and Lubin v. Panish*, 415 U.S. 709, 719, n. 5, 94 S.Ct. 1315, 1321 n. 5, 39 L.Ed.2d 702 (1974) ("The realities of the electoral process ... strongly suggest that 'ac-

cess' via write-in votes falls far short of access in terms of having the name of the candidate on the ballot.").

**4.** Limitations on sore loser candidacies deny a candidate a spot on the general election ballot if the candidate loses in the primary. *Anderson*, 460 U.S. at 784 n. 2; 103 S.Ct. at 1567 n. 2; *Storer*, 415 U.S. at 735, 94 S.Ct. at 1281. Party raiding occurs where "voters in sympathy with one party designate themselves as voters of another party so as to influence or determine the results of the other party's primary." *Rosario v. Rockefeller*, 410 U.S. 752, 760, 93 S.Ct. 1245, 1251, 36 L.Ed.2d 1 (1973).

*Anderson* does not require a showing of compelling state interests or narrowly tailored laws. It requires that the State's interests justify the burden placed on the plaintiff's constitutional rights.

Hawaii's election laws eliminate frivolous candidacies while still providing access to candidates who have a relatively minor modicum of support. Although the prohibition on write-in voting places some restrictions on Burdick's rights of expression and association, that burden is justified in light of the ease of access to Hawaii's ballots, the alternatives available to Burdick for expressing his political beliefs, the State's broad powers to regulate elections, and the specific interests advanced by the State.

## IV

We are not unmindful of the fact that the Fourth Circuit has reached a different conclusion in *Dixon v. Maryland State Administrative Bd. of Election Laws,* 878 F.2d 776 (4th Cir.1989). In *Dixon,* the Fourth Circuit held that the casting and counting of write-in votes implicates fundamental rights. *Id.* at 782. The state election law at issue in *Dixon* required candidates for certain city offices to pay a $150 filing fee in order to qualify as an "official" write-in candidate. Only official write-in candidates could attain office and have the votes cast for them publicly reported. In determining that the casting and counting of write-in votes implicated fundamental rights, the *Dixon* court stated that:

> It is apodictic that a vote does not lose its constitutional significance merely because it is cast for a candidate who has little or no chance of winning. Nor do we think it loses this character if cast for a non-existent or fictional person, for surely the right to vote for the candidate of one's choice includes the right to say that no candidate is acceptable. The Supreme Court has repeatedly recognized that minor parties and their supporters seek "influence, if not always electoral success."

*Id.* (citations omitted).

The *Dixon* court further reasoned that in many cases write-in voters cast their ballots "in the hope, however slim, that their votes will succeed as efforts to propagate their views and so increase their influence." *Id.* The *Dixon* court concluded that the expression of this hope is a constitutionally protected right. *Id.*

We decline to follow the Fourth Circuit's lead. *Dixon* fails to differentiate between a person's right to participate equally in the election of those who govern and a person's right to try to influence the election process. Although a person's hope that he will be able to propagate his views and increase his ability to influence the outcome of an election may be a constitutionally protected right, a prohibition on write-in voting does not substantially burden that hope. Hawaii's election laws do not affect the myriad of other avenues that are available for propagating one's views and increasing one's influence.

## V

■ The final issue raised by the State is whether the district court failed to give full faith and credit to the Hawaii Supreme Court's ruling in *Burdick v. Takushi,* 70 Haw. 498, 776 P.2d 824 (1989). In *Burdick,* the Hawaii Supreme Court held that Hawaii election law does not provide for or allow the casting of write-in votes. 776 P.2d at 825–826.

The State asserts that because Hawaii's constitution "tracks almost exactly" the federal constitution, and because Burdick did not limit his arguments before the Hawaii Supreme Court to the textually distinct provisions of Hawaii law, Burdick elected to seek a comprehensive and final adjudication of his rights in the state court. According to the State, Burdick was required to reserve his federal arguments explicitly when the district court certified the three questions on Hawaii state law to the Hawaii Supreme Court. *See England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 417–422, 84 S.Ct. 461, 465–68, 11 L.Ed.2d 440 (1964). We disagree.

The parties stipulated that the questions should be certified to the Hawaii Supreme Court, and the district court ordered that the certification take place. The district court specifically explained to the Hawaii Supreme Court that jurisdiction over the federal questions presented by Burdick's suit remained at the district court:

Should the Hawaii Supreme Court's decision require the district court to again address the federal constitutional question, the court, absent an intervening change of federal law, will issue a ruling consistent with its previous determination. Thus, the Hawaii Supreme Court's decision will be determinative of this action.

Burdick did not waive his rights to bring his federal claims before the federal district court, and the district court did not fail to give full faith and credit to the Hawaii Supreme Court's ruling on the certified questions.

## VI

We conclude that Hawaii's prohibition on write-in voting serves legitimate state interests and is a part of a comprehensive election scheme that provides Burdick with adequate opportunities and alternatives to exercise his rights of expression and association. The prohibition on write-in voting, therefore, does not create an impermissible burden on Burdick's first and fourteenth amendment rights when compared with the asserted interests of the State.

REVERSED.