**Juan CHAVEZ, Lawrence Fluellen, Trinidad Navejar and Alberto Daniel, Appellants,**

v.

**John HANNAH, Secretary of State of the State of Texas; Dan Morales, Attorney General of the State of Texas, et al., Appellees.**

**No. 3–91–182–CV.**

Court of Appeals of Texas, Austin.

April 1, 1992.

Rehearing Overruled May 6, 1992.

David G. Hall, Texas Rural Legal Aid, Inc., Weslaco, for appellant.

Linda Elder, Bailey County Atty., Muleshoe, for Marilyn Cox, Bailey County Judge; R.L. Scott, C.E. Grant, Joey R. Kindle and Bennie Claunch, Bailey County Com'rs.

Gary L. Bledsoe, Asst. Atty. Gen., Austin, for John Hannah, Jr., Texas Secretary of State and Dan Morales, Texas Atty. Gen.

Dan Morales, Texas Atty. Gen., pro se.

Before CARROLL, C.J., and ABOUSSIE and SMITH, JJ.

CARROLL, Chief Justice.

Juan Chavez did not comply with the Election Code requirement to declare himself a write-in candidate for justice of the peace in Bailey County, Texas. *See* Tex. Elec.Code Ann. § 146.025 (Supp.1992).

Nonetheless, fifty-nine voters wrote in the name "Juan Chavez," while the incumbent received only thirty-seven votes. The Bailey County officials refused to count the attempted write-in votes and certified the incumbent to take office.

Chavez and three write-in voters brought suit under the Texas Constitution seeking an injunction declaring Chavez justice of the peace. Chavez also asked the trial court to declare unconstitutional the relevant portions of the Election Code that require a candidate to file a write-in declaration.

The trial court rendered a take-nothing judgment against Chavez. We will affirm the trial court's judgment.

### DISCUSSION

#### Introduction

■ The appellants claim they have been disenfranchised. They contend that the Election Code interferes with the fundamental right to vote because a write-in candidate must register sixty days before the general election. Specifically, appellants attack Tex.Elec.Code Ann. §§ 146.-022–.023, .024(2), .025(a), .029, and .031 (1986 & Supp.1992) as unconstitutional under article I, sections 2 and 19 of the Texas Constitution. Tex.Const., art. I, §§ 2, 19. Their sole point of error on appeal is that the trial court erred in finding the statutes constitutional. We disagree with appellants.

■ At the outset, we note that the statutes have a presumption of constitutionality, *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 558 (Tex.1985), *appeal dism'd*, 475 U.S. 1001, 106 S.Ct. 1170, 89 L.Ed.2d 290 (1986), and that the right to vote has been considered a fundamental right in Texas. *See Sparks v. Busby*, 639 S.W.2d 713, 717 (Tex.App.1982, no writ), *McWaters v. Tucker*, 249 S.W.2d 80, 82 (Tex.Civ.App.1952, no writ). However, we know of no Texas case that defines write-in voting as a fundamental right. In fact, one Texas court has stated that a statute which completely prohibits write-in voting is a reasonable exercise of state power because "the legislature had the power to enact the law giving the voters the right to know who those candidates are prior to the holding of the primary election." *Lydick v. Chairman of Dallas County Republican Exec. Comm.*, 456 S.W.2d 740, 743 (Tex.Civ.App.1970, no writ) (stating that statute would not deny voters due process, equal protection, or inherent political powers under the Texas and United States Constitutions). Neither do the statutes at issue here interfere with the voting franchise in violation of article I, sections 2 and 19 of the Texas Constitution.

#### Federal Law

The issue before us is whether the Texas Constitution allows the State to require write-in candidates to register sixty days before general voting begins for elections of state and county officer. Finding no Texas cases directly on point, we may borrow from analogous federal law. While decisions of the federal courts do not bind Texas courts, they are received with respectful consideration. *Barstow v. State*, 742 S.W.2d 495, 501 n. 2 (Tex.App.1987, writ denied); *see also Wichita Royalty Co. v. City Nat. Bank*, 306 U.S. 103, 109, 59 S.Ct. 420, 422–23, 83 L.Ed. 515 (1939). Therefore, we may look to the federal courts for persuasive guidance.

We note that the federal courts have upheld legislation which completely abolishes write-in voting. *Burdick v. Takushi*, 927 F.2d 469 (9th Cir.1991), *cert. granted*, — U.S. ——, 112 S.Ct. 635, 116 L.Ed.2d 653 (1991). The court in *Burdick* explained:

> Casting one's vote does not implicate fundamental rights in a vacuum. Fundamental rights are implicated as a part of the process through which citizens elect the people who make and administer the laws. Burdick does not have a fundamental right to vote for any particular candidate; he is simply guaranteed an equal voice in the election of those who govern.

*Id.* at 473.

■ The court expounded on the nature of this fundamental right by pointing out

that the courts have upheld limits on the eligibility to vote or to be a candidate numerous times. *Id.* Therefore, the federal constitution may not require Texas or any other state to make write-in voting available. Moreover, the statutes challenged in this cause are much less severe than the ones in *Burdick*, since they do not prohibit write-in candidacies altogether, but merely require that write-in candidates register before the election. Thus, the Election Code satisfies the minimum rights' protection required by the federal constitution. *See LeCroy v. Hanlon*, 713 S.W.2d 335, 338–339 (Tex.1986) (holding that although federal constitution sets floor of rights, Texas Constitution may grant greater rights).

### Texas Law

■ We must now examine the due process guarantees of the Texas Constitution to determine whether they prevent the requirement that a write-in candidate register sixty days before the general election.

In examining the challenged laws, we notice that the requirements of the challenged sections demand little effort from the prospective candidate. The Election Code prohibits counting write-in votes for any candidate who did not properly register with the county judge sixty days before the general election. *See* Tex.Elec.Code Ann. §§ 146.022–.025, .029, .031 (1986 & Supp. 1992). While this scheme excludes from the election those who do not comply, we believe it does not directly infringe the public's right to vote. Rather, the statutes minimally affect the eligibility of someone to run as a write-in candidate.

Since early voting in Texas starts forty-five days before the general election, the statute actually requires registration only fifteen days before voting begins. *See* Tex.Elec.Code Ann. § 86.004 (Supp.1992). This short registration period, combined with the easy process of signing a declaration before the county judge, is not unduly burdensome on potential candidates. *See Burdick*, 927 F.2d at 473–74. Also, we note that the statutes apply to all individuals, classes, and political parties equally. Therefore, these requirements for candidacy do not directly impinge the franchise because they mandate minimal effort from the potential candidate. They do not stop the public from exercising its political voice, but simply regulate how a candidate may properly apply for the election.

Because the procedure required is so easy to accomplish, it cannot be said to have injured the public's right to vote. This early-registration requirement actually strengthens the right to vote, because it gives voters a chance to learn who is in the race and what the candidate's qualifications are. Thus, the voters have an opportunity to make a more informed choice on the ballot.

Since these statutes do not interfere with any fundamental right, the state must only provide a rational basis for the statutes. The State contends that these statutes further six important interests. The statutes: (1) relieve the State's burden of counting nuisance votes for ineligible candidates, e.g., "Mickey Mouse"; (2) relieve the State's burden of interpreting voter intent regarding the identity of the candidate, e.g., which "Juan Chavez"; (3) inform the voters that the candidate is qualified and intends to serve; (4) ensure that the office will be filled by election, not appointment; (5) ensure that the voters have time to assess the candidates so that they may make an informed choice; and (6) allow voters to participate in the election by advocating or opposing a candidate by working on the candidate's campaign. None of these state interests is trivial or inappropriate; indeed the "state has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies for election to public office." *Bullock v. Carter*, 405 U.S. 134, 145, 92 S.Ct. 849, 857, 31 L.Ed.2d 92 (1972) (discussing state filing fees for candidates). *See also Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 231, 109 S.Ct. 1013, 1024, 103 L.Ed.2d 271 (1989) (stating that protecting integrity of election process is a compelling state interest). These statutes prevent a secret blitzkrieg campaign from being waged at the expense of the unknowing voters and hon-

est candidates. We therefore hold that the statutes significantly further legitimate state goals.

## CONCLUSION

Because the state legislature has many legitimate interests in formulating election policies and the statutes at issue only require the candidates to register fifteen days before voting begins, Texas' due process requirements are not violated in this case. The limited, if any, impingement of the right to vote—combined with the legitimacy of the State's interests—compel us to uphold the constitutionality of these provisions. Appellants' sole point of error is overruled.

We affirm the trial court's judgment.