FRIEDLAND, Circuit Judge,
concurring in Parts I.1-I.4 of the majority opinion, and concurring in the judgment:
I agree with the majority that the district court obeyed the Supreme Court’s directives regarding how the remand in this case should proceed, and that the district court did not abuse its discretion in, accordingly, granting Rule 60(b)(5) relief to Defendants. I nevertheless write separately becaqse I understand Plaintiffs to be making additional arguments not addressed by the majority, and I believe their arguments merit a response. Specifically, I understand Plaintiffs to be arguing that, on its face, the four-hour English Language Development (“ELD”) model adopted by the state Task Force violates the Equal Educational Opportunities Act (“EEOA”) because it requires “segregation” of English Language Learners (“ELLs”) for four hours per day even after their first year of ELD instruction. I also understand Plaintiffs to be arguing that, even if the original statewide injunction is no longer justified, an injunction should remain in place in Nogales because No-gales’s implementation of the four-hour ELD model results in loss of academic content and unnecessary segregation for ELLs and thus violates the EEOA.
In response to those arguments, I would hold that although Plaintiffs have standing to bring a facial challenge to the four-hour ELD model adopted by the Task Force for use statewide, their challenge fails on the merits. Further, I would hold that Plaintiffs have not shown that their new objections to the four-hour model’s implementation in Nogales constitute EEOA violations that require maintaining an injunction in this case.
I.
Plaintiffs argue that the “four hour ELD requirement beyond the first year violates the EEOA because the degree of segregation required by the State is not necessary to achieve the State’s academic goal of proficiency in one year.” I understand this to be a facial challenge to the statewide imposition of the four-hour ELD model.
In my view, Plaintiffs have standing to bring such a facial challenge. Plaintiffs have described a concrete and particular *1009 ized “injury in fact” because they are subject to the four-hour model, and thus to its requirement that they learn English in a separate classroom. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). That injury is caused by the four-hour model, and it is likely that changing the model would lead Nogales to change its ELD program, so the causation and redressability requirements for standing are also met. See id. at 560-61, 112 S.Ct. 2130. That Plaintiffs are all from Nogales does not prevent them from having standing to facially challenge what is effectively a state law, because the statewide requirement impacts them personally. See Ariz. Libertarian Party, Inc. v. Bayless, 351 F.3d 1277, 1280-81 (9th Cir.2003) (per curiam) (holding that the plaintiffs had standing to challenge a statewide rule governing primary elections, even though primary elections were administered at the county level); Burdick v. Takushi, 937 F.2d 415, 417-18 (9th Cir.1991) (holding that the plaintiff had standing to challenge a statewide prohibition on write-in voting that affected him personally, even though an “order striking down the prohibition may apply to races in which [he could not] vote”).
On the merits, however, this facial challenge fails. It is not impermissible segregation to group students by language ability as long as there is a legitimate educational reason for doing so. See Castaneda v. Pickard, 648 F.2d 989, 998, 1009 (5th Cir. Unit A June 1981). We owe deference to state educational experts’ opinions, including the Task Force members’ determination here that students learn English best when taught in a separate classroom. See Horne v. Flores,, 557 U.S. 433, 468, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009) (“The EEOA’s ‘appropriate action’ requirement grants States broad latitude to design, fund, and implement ELL programs that suit local needs and account for local conditions.”); Castaneda, 648 F.2d at 998, 1009 (recognizing that school districts have discretion to decide whether language ability grouping is appropriate); cf. LaVine v. Blaine Sch. Dist., 257 F.3d 981, 988 (9th Cir.2001) (recognizing the “substantial deference” owed to educators in the First Amendment context because “[t]he daily administration of public education is committed to school officials”). It was not unreasonable for the Task Force to conclude that separating students by language proficiency for up to four hours each day would enable ELLs to develop their English language skills most quickly. Indeed, Plaintiffs do not even dispute this general principle. As the majority observes, Plaintiffs admit that they are not challenging the four-hour model as applied to first-year ELLs. Plaintiffs offer no support for their proposed distinction between the first and subsequent years of ELD — either in terms of why studying in a separate classroom becomes less helpful for language acquisition after the first year or in terms of why this separation becomes more harmful. Their facial challenge to the statewide requirement that ELLs receive English instruction in a separate classroom after the first year is therefore unavailing.
II.
I understand Plaintiffs to be making the additional argument that Nogales’s implementation of the four-hour model violates the EEOA by providing insufficient access to academic content for ELLs and by separating ELLs from their mainstream peers more than is necessary to teach them English. These arguments differ from Plaintiffs’ original claim in this lawsuit (that Nogales’s inadequate funding of ELD violated the EEOA), and Plaintiffs’ new arguments are not clearly addressed by the four considerations that the Supreme Court articulated in response to the *1010 original funding-based claim.[1] Home, 557 U.S. at 459, 129 S.Ct. 2579. As students from Nogales, there is no question that Plaintiffs have standing to make these arguments. On the current record, however, the challenges to the implementation of the four-hour model in Nogales fail on the merits.
With regard to ELLs’ access to academic content in Nogales, the district court found that “Nogales has an effective ELD program.” Based on the performance of former ELLs in Nogales, this factual finding was not clearly erroneous. Former ELLs who have been classified as English-proficient for at least two years (“FEP-2s”) met or exceeded state and district averages on AIMS tests in almost all subject-grade combinations in 2006-2009— all of the years for which AIMS data are available in the record.
The district court also appropriately found that Nogales provides substantial support for ELLs and former ELLs to compensate for any diminished exposure to academic content resulting from ELD. For example, Nogales offers summer school and after-school tutoring. These programs cover academic subject areas beyond English, including support for science and math. The fact that FEP-2s in No-gales had a high school graduation rate over 90% each year between 2006 and 2010 also supports the conclusion that ELLs are eventually exposed to necessary academic content.
With regard to their segregation allegations, Plaintiffs argue that, pursuant to guidance provided by the Department of Education’s Office for Civil Rights (“OCR”), Nogales’s implementation of the four-hour model violates the EEOA because it is not “the least segregative manner” of ELD. “Dear Colleague” Letter from U.S. Dep’t of Justice, Civil Rights Div., and U.S. Dep’t of Educ., Office for Civil Rights 22 (Jan. 7, 2015), available at http://www2.ed.gov/about/officesAist/ocr/ letters/colleague-el-201501.pdf. The OCR letter interprets the EEOA as requiring schools to “avoid unnecessary segregation of’ ELLs, and opines that a program that separated ELL from non-ELL students “in subjects like physical education, art, and music” or “during activity periods outside of classroom instruction” probably would violate this requirement. Id. Assuming that the OCR letter correctly interprets the EEOA, Plaintiffs have not put forward evidence showing that implementation of the four-hour model in Nogales results in language-ability-based grouping for more than the ELD portion of the day. To the contrary, Defendants have presented evidence that ELLs in Nogales participate in extracurricular activities alongside non-ELLs, and that former ELLs have access to the full academic curriculum.
The record does not contain enough years of ELL performance data after the implementation of the four-hour model to be certain of the model’s effectiveness at teaching English or of its long-term impact on overall academic success. The district court appropriately concluded, however, that, based on the evidence that does exist, Plaintiffs could not show their new challenges to the implementation of the four-hour model in Nogales require maintaining an injunction.
*1011 If evidence of an EEOA violation emerges in the future, a new lawsuit could of course be brought. But the district court here correctly concluded that the current lawsuit “is no longer the vehicle to pursue the myriad of educational issues” about which Plaintiffs are concerned. The district court appropriately concluded that the injunction imposed in this lawsuit is no longer justified by Plaintiffs’ original claims, and that their new claims fare no better. The district court therefore did not err in vacating the injunction.

. Although these claims were not part of Plaintiffs' original lawsuit, and although Plaintiffs presented these arguments in the district court primarily as statewide challenges to the four-hour ELD model, the district court explicitly reached these arguments, construing them as challenges to Nogales’s implementation of the Task Force model. Defendants have not argued that Plaintiffs waived these Nogales-specific arguments by not presenting them more distinctly below, or by not raising them earlier in the litigation.